(No. 44146.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EILEEN CURRY, Appellant.

*Opinion filed Nov. 20, 1973.—Rehearing denied Jan. 29, 1974.*

Elmer Gertz and Wayne B. Giampietro, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Kenneth L. Gillis and Patricia C. Bobbs, Assistant State's Attorneys, and John B. Adams (Senior Law Student), of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Eileen Curry, defendant herein, and Vivian Garcia were charged in a multi-count indictment returned in the circuit court of Cook County. Count I charged them with conspiracy to commit prostitution and also named Linda Marshall as an unindicted co-conspirator. In count II defendant was charged with pandering in that she arranged for Vivian Garcia to practice prostitution in return for monetary consideration. Count III alleged that defendant solicited for a prostitute. The final count averred that Vivian Garcia committed prostitution and the record discloses that she pleaded guilty. Following a bench trial defendant was convicted on all charges and sentenced to the penitentiary for a term of one to three years. Defendant appeals, challenging the validity of a search conducted by police at the time of her arrest, the adequacy of the indictment and the sufficiency of the evidence necessary to sustain guilt.

Prior to trial a discovery motion was filed on

November 24, 1970, by defendant's retained counsel, who was one of three who represented her at separate instances during the course of the proceedings. This motion, in part, sought production of a copy of the complaint for a search warrant and the warrant issued pursuant thereto. The State responded three weeks later that the court file contained this information and defense counsel might obtain the material from the circuit court clerk upon request. On February 5, 1971, a written motion to quash the search warrant and suppress evidence was filed, averring that the room searched was not the one described in the warrant. The present record does not contain the original warrant, a complaint for the warrant or copies thereof.

At the hearing on this motion, defendant's second retained counsel and the prosecution had unsigned copies of the search warrant. Defense counsel orally sought leave to amend the written motion and requested that the original warrant be produced. The prosecutor again responded that this document was in the court file. The parties then, rather than cause further postponement, agreed to proceed without further request for the production of the original warrant.

As described by defense counsel, the warrant authorized the search of an office located at the north or northwest corner on the second floor of a building located at 1630 Armitage Avenue in Chicago. The defense claimed, however, that the office occupied by defendant was actually located at the northeast corner of the building. Defendant testified that several weeks before her arrest on August 14, 1970, she had moved from her office in the northwest portion of the building to one located across the hallway at the northeast corner. She could not recall the number of the telephone located in her former office. On the door of her new office was a sign which read "Unique Unlimited." Her further testimony, as well as that of an acquaintance, presented a confused geographical description of the precise location of the office but the record

tends to establish that the entrance to the building was slanted in a northwesterly direction due to the fact that the building was constructed at an angle. Upon reaching the second floor, a person would make several turns and then walk in a northwesterly direction to defendant's office. There was no evidence that any office door displayed a number. The motion was denied.

On the date set for trial (March 18, 1971) defendant's final retained counsel presented another written motion to suppress evidence realleging the basis of the prior motion (the search of the wrong office) and further contending that the items seized should be suppressed because no inventory of those items was filed; that the police did not give defendant a copy of the warrant; and that the police had no warrant at the time of the search because, as defense counsel explained, the warrant was not procured until several hours later. The motion was denied and trial commenced.

Officer August Blue of the State's Attorney's police testified that on August 14, 1970, he was given a telephone number which he called and then asked for Margo. The party who answered identified herself as Carol and they spoke for about ten minutes. Blue identified himself as "Jim T" and told her that he was "out for a little fun." The other party then informed him of two women who were staying in area motels. Because of scheduling difficulties with the woman located in Chicago, Blue said that he would go to the suburban motel. He was informed that he might bring a friend and the cost would be $25. He was also told to identify himself as "St. Charles" and that the name of this woman was Vivian.

Blue and his partner then went to the motel where he met a female who identified herself as Vivian. After he told her that he was "St. Charles", she let him into the room and his partner waited in an adjoining area. Blue gave her $25 and they agreed to the sexual acts which would be performed. During this conversation she told him that the

money she received was divided with another party. After she disrobed, Blue and his partner arrested her. The State's Attorney's office was notified and the girl, Vivian Garcia, was taken there.

Blue further testified that later that afternoon he entered a State's Attorney's office where he saw defendant and officer Corbett. He spoke to the latter and defendant interrupted, remarking that his voice sounded like the person with whom she had talked earlier that day. Blue identified defendant's voice as belonging to the party with whom he had spoken when the arrangements for the services of Vivian Garcia were made.

Officer William Corbett testified that on August 14, 1970, at 12:50 P.M., he arrived in his car near 1630 Armitage Avenue. After waiting more than an hour, he received a radio message from officer Gorman, who told him that a search warrant had been issued. He was told to seize material in desk drawers and other places in the office dealing with a "call girl" operation. Corbett said he was familiar with the type of material which would normally be included within this description. Upon entering the building, he went to an office located in the northwest corner of the second floor. The door bore a paper tag reading "Barbara Graham" or "Barbara Graham and Associates." He was about to open it when defendant came out holding an envelope. He took the envelope, told her that she was being detained and that a search warrant had been issued. He then informed her of her *Miranda* rights, which she said she understood. About one-half hour later Gorman arrived and she was given a copy of the search warrant. He said that the office contained some "old rags" but he did not know if they were related to clothing or dress-making. He searched a desk, closet and ceiling area of the office, and seized other documents in addition to papers contained in the envelope which seemed pertinent to the object of the search. In the State's Attorney's office later that afternoon he said defendant

admitted to him that she had been engaged in prostitution-related activities during the past month because of her need for funds to pay certain bills. She said that she realized something was amiss when she tried to reach Vivian by phone at the motel but received no answer. She described the monetary arrangements she had established which allowed her to receive 40% of the money collected after motel room rent was paid. She further acknowledged that in the event of an arrest she would pay legal fees and secure bail bonds.

An attempt to renew a defense motion to suppress evidence on grounds previously alleged was denied. During the discussion on the motion the prosecutor stated that the search warrant in question had been issued by a judge at 1:50 P.M. on the day defendant was arrested. Defense counsel did not dispute this.

Linda Oswalt, also known as Linda Marshall or "Twiggy", was called by the prosecution and identified herself as the woman who was staying in the Chicago motel on August 14, 1970. She testified that Vivian Garcia introduced her to Margo (Nancy Brown), who in turn introduced defendant to her in the early part of August, 1970. Defendant asked her if she would perform certain sexual acts and an agreement was made whereby defendant would arrange for this witness to be a prostitute. In return, the money she received would be divided with Nancy Brown and defendant. About one week prior to August 14, 1970, she said that Nancy Brown and defendant terminated their association and she thereafter worked for defendant, who permitted her to retain a larger share of the proceeds. At five meetings prior to that date she divided money with the defendant. On August 12 she registered at the Chicago motel using the name Linda Marshall. She was arrested there on August 14, the same day defendant was taken into custody. However, prior to her arrest she claimed that defendant had telephoned her informing her of several appointments that day.

The envelope taken from defendant by Corbett was introduced into evidence and it contained several slips of paper bearing the terms "St. Charles" and "Jim T." Other papers bore the names, addresses and appointments in a certain motel and on one was written the name "Twiggy." Defense motions to exclude these items were denied.

Defendant testified that she and Nancy Brown were in the dressmaking business. They had contemplated a partnership but an argument developed and Nancy Brown removed her possessions from the Armitage Avenue location. Several rolls of fabric and related items were left in the office. At the time of her arrest, she was about to go across the hallway to another office to get coffee when Corbett and Gorman confronted her, told her that a search warrant was being obtained and proceeded to search the office. It is to be gathered from defendant's testimony that this area consisted of one room and a storage space. Attached to the office door was an orange paper reading "Unique Limited." She claimed that several hours later another officer arrived and gave her a copy of the search warrant, which was used at trial as a defense exhibit. She denied talking to "Jim T" or telling Blue that she recognized his voice, although she admitted that while she was being detained in the State's Attorney's office Blue and Corbett were present. She also denied any involvement in prostitution but did say that she knew Vivian Garcia and Linda Oswalt and that she talked to the latter concerning modeling. She did not recall the number of the two telephones located in the office and disclaimed knowledge of the papers introduced into evidence.

Various stipulations were entered to the effect that certain witnesses would testify on behalf of defendant that several bolts of material were in the office on the date of her arrest; that defendant was there from 10:30 A.M.; that the number Blue dialed was not assigned to a telephone located in that office and that the records of the Chicago motel would indicate that no party named Linda Marshall

had registered during the two days immediately preceding defendant's arrest. It was further stipulated that defendant's Federal probation officer would testify that to her knowledge defendant was engaged in the dressmaking business.

Defendant advances numerous reasons for the illegality of the search. She contends that there was no showing by the State that a search warrant was in fact signed by a judge, for at no time was the original warrant introduced even though a defense request was made for its production. It is settled that specific objections to the admission of evidence waive all grounds not specified (*People v. Canaday, 49 Ill.2d 416, 423-24*) and that one may not raise on appeal a question which was not properly presented to the trial court. (*People v. Amerman, 50 Ill.2d 196, 197; People v. O'Malley, 404 Ill. 165, 170-71.*) In this case there were two written motions and several oral objections to exclude evidence, yet at no time did any defense counsel claim that the State's failure to produce the original warrant raised a ground for suppression. Rather there is only one brief instance during the hearing on the motion to suppress where reference is made to production of the original warrant, and we interpret defense counsel's subsequent action as withdrawal of this request. Moreover, defendant's post-trial motion did not specifically raise this issue but only referred to the trial court's failure to grant the suppression motions, which were not based on the contention that a judge had not signed the warrant. (See *People v. Pickett, 54 Ill.2d 280, 282.*) Under these circumstances we conclude that defendant has waived consideration of this issue on appeal.

Defendant further seeks to invalidate the search based upon the fact that officer Corbett did not have a copy of the warrant at the time he began his search and therefore did not specifically know what materials were to be seized. No contention is raised that the envelope and papers taken from defendant and introduced into evidence were not

within the category of property described in the warrant. While defendant asserts that the warrant did not set forth the items to be seized in detail (*People v. Sovetsky, 343 Ill. 583*), it has been recognized that when property of a specified nature is to be seized rather than particular property then a description of its characteristics is sufficient. (*People v. Prall, 314 Ill. 518, 523.*) Here we find that the general description of the items was sufficiently specific under the facts, and the seizure made hereunder was legal. See *People v. Williams, 40 Ill.2d 522, 531.*

Defendant argues that the police were required to furnish a copy of the warrant to defendant prior to commencing the search and their failure to do so renders the search improper. No claim of prejudice is advanced and we thus find no merit to this contention. See generally, *United States v. McKenzie (6th Cir. 1971), 446 F.2d 949, 954; cf. People v. Smith, 50 Ill.2d 229.*

It is urged that the police acted improperly because they exceeded their authority by indiscriminately seizing "all" documents in defendant's office regardless of their content, thus resulting in an unreasonably broad search. She concludes that such action cannot be countenanced for it would permit the issuance of a search warrant to be used as a mere sham to allow a general search. We reject this contention. A limited number of documents which were within her immediate control were introduced in these proceedings. Defendant's assertion is also refuted by Corbett's testimony that only documents which appeared to pertain to the object of the search were seized. Moreover, defense counsel did not challenge the search on this specific basis before the trial court.

Defendant argues that the impropriety of the search is evidenced by the failure to inventory the items seized as provided by statute. (Ill. Rev. Stat. 1969, ch. 38, par. 108—10.) It is suggested, without citation of case authority, that if an inventory had been filed, it would have indicated that the scope of the search warrant was

exceeded. We have previously determined that Corbett's testimony tends to prove that police action did not transcend these limits. Furthermore, our decisions have held that failure to follow the requisite statutory provisions relating to procedures to be followed after a search warrant has been served does not necessitate invalidation of the search warrant or search conducted pursuant thereto. *People v. Hawthorne, 45 Ill.2d 176, 179, cert. denied, 400 U.S. 878, 27 L. Ed. 2d 115, 91 S. Ct. 119.*

Her final allegation of error pertaining to the validity of the seizure is directed to her claim that the office searched was not the office specified in the search warrant for her office was located in the northeast portion of the building rather than in the northwest area as described in the warrant. The record is conflicting as to the actual geographical location of defendant's office because of the manner in which the building was constructed, thereby rendering an exact technical description improbable. It is clear that the description contained in the warrant, however, could not be said to be greatly at variance with its exact location. It is also apparent that the office door bore no permanent identifying number or other similar feature. Defendant's testimony as well as that of Corbett established that the only notation on the door was a paper sign, the actual description of which is disputed. However, the record suggests that Corbett experienced no doubt as to the location of the area to be searched when he approached defendant's office. From the totality of the circumstances we cannot say that the warrant did not set forth as sufficiently as possible a description which would enable a police officer using reasonable efforts to identify the area to be searched with the requisite degree of certainty. *People v. Watson, 26 Ill.2d 203.*

Both defendant and the State have devoted substantial portions of their briefs in attempting to establish their respective positions as to the validity of count I of the indictment, which charged conspiracy to commit prostitu-

tion. Such misunderstanding is explained by the fact that certain entries contained in the record indicate that defendant was adjudged guilty on all charges and sentenced to the penitentiary on each count of the indictment. Examination of the transcript of proceedings might tend to create the impression, however, that defendant was sentenced only upon count I of the indictment, although it is clear that the trial court found defendant guilty of each charge. The applicable law provided that "A person convicted of conspiracy may be fined or imprisoned or both not to exceed the maximum provided for the offense which is the object of the conspiracy." (Ill. Rev. Stat. 1969, ch. 38, par. 8—2(c).) Thereafter are listed several enumerated exceptions which provide for penitentiary sentences, but prostitution (par. 11—14) is not among them. Rather prostitution as well as solicitation for a prostitute (par. 11—15(b)), which was the offense alleged in count III, are classified as misdemeanors because these offenses do not authorize a penitentiary sentence. The only charge involved herein permitting a penitentiary sentence is pandering (par. 11—16). The offenses of which defendant was convicted arose from the same conduct (*People v. Lerch, 52 Ill.2d 78; People v. Whittington, 46 Ill.2d 405*), and under the pertinent statutory provision (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(m)) a judgment could only have been imposed on the most serious offense, which is pandering. (*People v. Prim, 53 Ill.2d 62, 78.*) We therefore will not consider the adequacy of the counts of the indictment charging only misdemeanor offenses.

Count II of the indictment charged that on August 14, 1970, defendant "committed the offense of pandering in that she, for money, knowingly arranged and offered to arrange a situation in which a female, one Vivian Garcia, may practice prostitution, in violation of Chapter 38, Section 11—16(a—2), of the Illinois Revised Statutes 1969." Defendant maintains that this is deficient because it failed to state the name of any person who was the

object of the offense and by use of the term "may" any inference was negated that defendant recruited Vivian Garcia or allowed her to practice prostitution. Both contentions are without merit. An indictment is sufficient if it is phrased in statutory language, as here; it informs defendant as to the nature of the charge thereby permitting the accused to prepare a defense; and it prevents subsequent prosecution for the same offense. (*People v. Harvey, 53 Ill.2d 585, 588.*) We find that count II satisfied these criteria, and if defendant desired to obtain the name of the party who was the object of the offense this may have been accomplished by a request for a bill of particulars. Ill. Rev. Stat. 1969, ch. 38, par. 111—6; see *People v. Tammen, 40 Ill.2d 76.*

Defendant finally argues that she was not proved guilty beyond a reasonable doubt. Basically, her contention challenges the credibility of Linda Oswalt, the ability of officer Blue to identify her voice as that of the person with whom he talked, and the fact that the number he dialed was not assigned to a telephone in the office where defendant was arrested. In *People v. Adams, 46 Ill.2d 200, 208-09,* we observed that it is "the function of the trial court as the trier of fact to evaluate the credibility of the witnesses and its 'finding of guilty will be disturbed only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to defendant's guilt.' " Having considered the record, we do not believe that the trial court's evidentiary determination was erroneous.

For these reasons we affirm the judgment of the circuit court of Cook County finding the defendant guilty of pandering but we modify the judgment to specify that the conviction and sentence imposed be for the offense of pandering alone. *People v. Brown, 52 Ill.2d 94.*

*Judgment affirmed as modified.*