THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THEOLIS HINTON *et al.*, Defendants—(John L. Miller, Defendant-Appellant).

(No. 73-125; ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Second District—November 18, 1974.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Defendant and Theolis Hinton were charged with armed robbery. Hinton pleaded guilty on a negotiated plea. The defendant pleaded not guilty and after a jury trial was convicted and sentenced to not less than 5 nor more than 25 years in the penitentiary. From this conviction and sentence the defendant appeals on the grounds that (a) he was not represented by counsel at the identification lineup, (b) photographs shown to the witnesses for identification purposes were impermissibly suggestive, thus tainting the identification, (c) the in-court identification was improperly admitted because not shown to have been based on observation independent of the illegal lineup and (d) his minimum sentence of 5 years should be reduced to 4 years because under the Unified Code of Corrections 4 years is the minimum and this is what the judge intended.

The robbery in question occurred on October 21, 1971, at a cocktail lounge known as Star Lite Lounge. One man, later identified as Hinton, entered the lounge, looked around, spoke briefly to the bartender and left. He returned a few minutes later with another man (later identified as the defendant). Both men were armed, Hinton with a sawed-off shotgun, the defendant with a chrome-plated pistol. Present in the lounge at the time were the proprietor, Shaffar; the bartender, Betty Saulton; and two patrons, Dennis Frost and a woman named Fritzy. While the robbery was in progress a patron, Niemi, entered and was also detained and robbed. The robber with the shotgun pointed it at the head of Frost and the other robber jumped over the bar, seized the bartender and walked her to the two cash registers, which she proceeded to empty out. All the persons present were robbed of the money they had with them in addition to the robbery of the lounge proceeds. When the robbers left the proprietor, Shaffar, called the police and gave them a brief description of a car he had glimpsed as the robbers drove away as being a black convertible with a white top, probably a Buick. A few minutes later a police squad car observed such an automobile and pursued it, whereupon the car stopped and two men jumped out, at the same time throwing a shotgun out. In the ensuing scuffle Hinton was handcuffed but the defendant, after struggling with one of the officers for a few minutes, broke away and escaped. Hinton was taken to the police station and an officer assigned to watch the suspected automobile found a wallet belonging to the defendant and a broken bracelet, later identified as defendant's, near the automobile at the scene of the arrest.

The next morning, October 22, a lineup was arranged so that the victims could view the suspect, Hinton. After this lineup the witnesses, Shaffar, Frost and Niemi, were shown "mug" shots in order to pick out

the second robber. Frost and Niemi picked out the defendant but Shaffar did not identify anyone. Pursuant to an arrest warrant and complaint issued the same day the defendant was arrested on October 23. On October 24 the defendant was placed in a lineup which was viewed by Frost, Shaffar, Betty Saulton and the arresting officer who had handcuffed Hinton. All but Mrs. Saulton identified the defendant as the second robber, although Shaffar did not do so immediately and the officer refused to let him change his identification.

At the lineup the defendant was not represented by counsel. The defendant was subsequently indicted and moved to suppress the identification evidence on the ground that the pictures were suggestive and the lineup illegal because he was not represented by counsel. The motion was denied, the identification evidence was used at the trial and the defendant was convicted.

We first consider the issue raised by the defendant as to whether the lineup identification should have been suppressed on the ground that defense counsel was not present. Following the United States Supreme Court cases of *United States v. Wade* (1967), 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951, which held that an identification lineup was a critical phase of the criminal proceedings against the defendant, our supreme court held in *People v. Palmer* (1969), 41 Ill.2d 571, that *Gilbert* and *Wade* required the presence of counsel at the lineup only where the defendant had already been indicted and that since this was an identification made at the police station prior to any indictment the doctrine of the *Wade* and *Gilbert* cases did not apply. Subsequently, however, in *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877, the United States Supreme Court made it clear that the requirements of a defense counsel's presence at the lineup extended to any "adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Accordingly in the later case of *People v. Burbank* (1972), 53 Ill.2d 261, our supreme court interpreted the doctrine of *Wade* and *Gilbert* in the light of *Kirby v. Illinois* and broadened the doctrine as applicable under Illinois law to "not only post-indictment lineups but to lineups conducted after the initiation of adversary judicial criminal proceedings against an accused by whatever means." 53 Ill.2d 261, 272.

In the light of this language the defendant maintains that the identification lineup evidence must be suppressed because the issuance by the State of an arrest warrant following a formal complaint and the defendant's arrest pursuant thereto, together constituted "adversary judicial criminal proceedings" against the defendant and the absence of counsel

at the lineup therefore falls within the prohibition announced in *People v. Burbank.*

The State argues that a mere complaint is not a "formal charge" and an arrest consequent upon the complaint is not an adversary judicial proceeding so that *People v. Burbank* does not apply in this case, which is actually governed by the earlier pronouncement in *People v. Palmer.*

It should be noted that in neither *People v. Palmer* nor *People v. Burbank* had the defendant been formally charged with the crime in question. *Palmer* was decided before *Kirby* and went on the basis that no indictment had been secured at the time of the lineup. In *Burbank* the court, while recognizing the broadening effect of *Kirby*, still held the lineup evidence admissible on the ground that the defendant at the time of the lineup had not yet been formally charged with murder.

The United States Supreme Court in *Kirby* speaks of "formal charge" as well as preliminary hearing, indictment, information and arraignment as being adversary judicial criminal proceedings, the initiation of which triggers the requirement of defense counsel at the lineup. We are thus faced squarely with the question whether a complaint followed by an arrest warrant and the actual arrest of the defendant amounts to, if nothing else, a "formal charge" and thus fall within the ambit of the Supreme Court's dicta describing the kind of "adversary judicial criminal proceedings" which necessitate the presence of counsel.

■■ After careful consideration we are unable to agree with the State's contention that the proceedings here were not "adversary and judicial." As to the exact point at which a proceeding against an individual commences to be an "adversary judicial criminal proceeding" we need not here determine but we are of the opinion that in this case the proceedings had reached that critical stage at the time of the identification lineup. We therefore distinguish the present case from *Burbank* and *People v. Williams* (1972), 52 Ill.2d 455, where a formal charge had not preceded the lineup, and hold that the defendant's situation here comes within the stricture of *Kirby* and the general language of *Burbank* requiring the presence of counsel at a lineup.

We are not, however, persuaded that this holding requires a reversal of the judgment reached in the trial court, as is contended by the defendant. The requirement of counsel's presence is founded on considerations of due process. If all the circumstances taken together clearly indicate that due process was followed the absence of counsel at the identification lineup is not fatal to the judgment reached by the trial court. As our supreme court said in the *Burbank* case:

> "Whether the defendant was denied due process of law depends upon the totality of the circumstances surrounding the identifica-

tion procedure. If the witness had an opportunity to observe and there is little likelihood of mistaken identification a conviction based upon a subsequent in-court identification will not be set aside. (*People v. Fox,* 48 Ill.2d 239.)" (53 Ill.2d at 273.)

In this case we must inquire, therefore, whether the independent identification outside the lineup itself was sufficient to sustain the in-court identification of the defendant, disregarding entirely any support lent to it by the lineup identification.

The defendant was identified in court by four witnesses, Mr. Shaffar, Mr. Frost, Officer Johnson and Officer Beres. Mr. Shaffar, the proprietor of the lounge, testified that he saw the defendant behind the bar while he was rifling the cash registers and holding a gun to the bartender's head during a period of at least 3 minutes. He observed him at the south cash register which was well lighted for about 20 seconds and again at the north cash register for about 20 seconds. He observed defendant at a distance of approximately 5 feet when he marched the bartender, Betty Saulton, toward the north cash register with a gun at her head. At this time Shaffar was facing south and defendant was facing east or north. When the defendant picked up the purse of one of the lounge patrons he faced north which made him face to face with Shaffar. A patron, Frost, testified that he saw both men when they entered the lounge. He watched the defendant go over the bar and proceed to the south cash register. When Frost first observed him the defendant was standing right underneath the bar light and there was a fluorescent light in the ceiling besides the bar light. Frost observed the defendant face to face as he looked south while the defendant was marching the bartender north to the north cash register. He watched the defendant extract the contents of Betty Saulton's purse and he was only 4 feet away at that time. He picked the defendant's photo from a packet of five or six unmarked photos handed to him by a police officer at the police station. Shaffar also picked out the defendant from several photographs at the police station.

Officer Johnson testified he saw the defendant as he emerged from the stopped vehicle at the scene of Hinton's arrest. The headlights and the searchlights of the squad car were lit and in addition the headlights of defendant's car were on. Also there was a street light overhead. Johnson approached the defendant, seized him and struggled with him. For a brief period he was face to face with the defendant under good lighting before the defendant broke away and fled. Officer Beres also testified that he had opportunity to observe the defendant while Officer Johnson was struggling with him. He approached the defendant face to face and took a gun from under his arm just before the defendant broke away. The gun was of the same general description as the one used in the robbery

and was identified as the gun taken from the person who escaped at the scene of Hinton's arrest.

In addition the defendant's wallet was found by a police officer detailed to watch the robber's car near the curb alongside the car and a bracelet was found nearby which admittedly carried the defendant's nickname, "Bud-T." Hinton, who pleaded guilty, and the defendant were friends and had been seen together on the evening of the robbery.

Considering the opportunity of the witnesses who identified the defendant to observe him during several minutes at the scene of the robbery, the identification by the two officers who saw him face to face under good lighting and the fact that the defendant's wallet and bracelet were found at the scene of the arrest, there seems to be in this case more than sufficient evidence independent of the lineup identification to justify identifying the defendant as the robber. In *United States v. Wade,* the pioneer case on the question of lineup identification without the presence of counsel, the United States Supreme Court in discussing sources of identification and the question of whether independent sources of identification might be sufficient to overcome the deficiencies of a lineup, said:

> "We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 US 471, 488, 9 L ed 2d 441, 455, 83 S Ct 407, ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.", Maguire, Evidence of Guilt 221 (1959).' " (388 U.S. 218, 241, 18 L.Ed.2d 1149, 1165.)

The court mentions as factors to be considered in applying this test:

> "[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." (388 U.S. 218, 241, 18 L.Ed.2d 1149, 1165.)

In the case before us there was ample time and opportunity for the witnesses who were victims of the robbery to observe the crime and the criminals; there was no identification of another person prior to the lineup; the witnesses did identify the defendant by pictures prior to the lineup and the time between the alleged act and the lineup identification was very short. In *People v. Pierce* (1972), 53 Ill.2d 130, where the defendant contended the lineup should be suppressed both because of lack

of counsel and because it was presented in an impermissibly suggestive manner, our supreme court, while agreeing as to the suggestibility of the lineup, held it did not require reversal of defendant's conviction because the victim's identification of the defendant was based on good opportunity to observe the defendant over a period of several minutes while struggling with him and his identification therefore was entirely independent of the suggestive lineup.

■■ In view of the identification evidence entirely outside of and independent of the lineup in the case before us, we are not persuaded that due process was violated by the absence of counsel at the identification lineup, whether or not the circumstances justified the claimed right to counsel.

We will not speculate on the possible objections or suggestions of counsel at the lineup if counsel had been present to represent the defendant, but in view of the independent sources for identification there is no basis for supposing that the in-court identification would have been ruled inadmissible in any event. We feel that there is, therefore, no basis for the defendant's contention that the introduction of the lineup identification evidence was harmful error in that otherwise there would have been insufficient evidence to sustain the defendant's conviction beyond a reasonable doubt. Therefore, while we are conscious of the rule announced in *Gilbert* that where the lineup is legally tainted by the absence of defendant's counsel, the testimony of witnesses that they identified the defendant at such lineup is inadmissible, we are of the opinion that their testimony on this point did not substantially harm the defendant in the light of the other competent identifying evidence. Since it appears to us beyond a reasonable doubt that the other sources of identification were sufficient to establish the defendant's participation in the crime, we consider the error in admitting the lineup testimony as harmless and not requiring a reversal of the result below. Without doubt, in our opinion, the result would have been the same had the identifying witnesses not testified at all as to any identification of the defendant at the lineup.

■■ The day before the lineup Shaffar, Frost and Betty Saulton were each shown separately a group of six unmarked photographs—all torso shots of young blacks—to assist in identifying the robber. Five of these photographs carried a 1971 date in the margin; the defendant's carried a 1967 date. The defendant claims this was prejudicial in that it might easily have been deduced by persons viewing the photos that the one carrying the 1967 date indicated a prior incarceration of the subject. We think the defendant exaggerates the importance of the date in the margin of these pictures. A victim of a robbery, shown several unmarked photos, one of whom might be the robber, while a police officer looks on awaiting his reaction, is not, we think, apt to engage at that moment in any de-

ductions as to the significance of a date on the picture. He is looking for something in the facial characteristics that is familiar to him. A person looking at "mug" shots, even if unsophisticated in such a situation, probably realizes that all the persons depicted have had some trouble of one kind or another with the police, but his main attention is likely to be directed at the moment of first impact, to the face in the picture rather than extraneous data in the margin. Indeed, the more recent date may just as easily have had a prejudicial effect as the older one, at first glance, if it was remarked at all.

Betty Saulton, who viewed the photos, failed to pick anyone as the robber, which indicates the date was not an obvious way of directing attention to the defendant. Significantly, Betty Saulton was not in a position to see the robber face to face for more than a second or two because he stood cheek to cheek alongside her and held the gun so she could not turn her head to get a full face look at him. This, we think, is why she failed to identify the defendant as the robber in spite of the clue which the defendant claims was so obvious. In view of these considerations we are not inclined to agree that the "mug" shots as shown prejudiced the defendant.

The defendant contends that his sentence of 5 to 25 years in the penitentiary violates the Unified Code of Corrections in that the remarks of the trial judge, "I'm going to impose a sentence on the defendant of not less than five years, which is the minimum provided by law in this manner * * *," indicated an intention on his part to impose only the minimum sentence and not an arbitrary sentence of 5 years, and that since the applicable minimum for armed robbery is 4 years under the Unified Code and the code is applicable because the case had not reached final adjudication at the time the code became effective, his minimum sentence should be reduced to 4 years.

■■ We agree that the defendant's argument has merit, however, since the intention of the trial judge is easily ascertainable we see no reason to decide the matter here. We remand the case, therefore, for determination by the trial court of the minimum sentence to be imposed.

The case is therefore affirmed as to the defendant's conviction and remanded for determination of the minimum sentence to be imposed.

Affirmed and remanded.

GUILD and SEIDENFELD, JJ., concur.