THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD WAYNE DOVE, Defendant-Appellant.

Fourth District   No. 4—86—0012

Opinion filed September 15, 1986.

660

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal from a conviction at bench trial of the offense of murder. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2).) Defendant raises several issues: (1) his sixth amendment right to counsel attached upon the filing of a complaint for an arrest warrant and the issuance of an arrest warrant, thereby rendering inadmissible the incriminating content of two separate conversations with a police informant, (2) in the alternative, his fifth amendment right to counsel was violated where the police used an informant to solicit information, (3) that a four-day delay between the time of the arrest and the time of the arraignment was unnecessary and prejudicial, and (4) admission of evidence about the victim's body was improper because the State failed to prove that the body inevitably would have been discovered without the defendant's incriminating admissions.

On August 30, 1985, police received a missing-person report concerning Melodie Dove from Melodie's mother. During their investigation of the report, evidence led police to focus their attention on the defendant. Significantly, police discovered bloodstains which matched the type of Melodie's in the defendant's home and automobile. In addition, a number of witnesses either knew that Melodie was going to visit the defendant or saw her arriving at his house on the evening of her disappearance. On September 11, 1985, Officer Mowen of the Decatur police department received an anonymous phone call at 3 a.m. from an unknown male. The caller explained that the defendant told him that he had taken Melodie outside of the county, had tied and gagged her, and was taking food and water to her. In some manner, not evident from the record, the officer subsequently learned that the caller might be Gerald Alsup. Later that same day the officer phoned Alsup and asked him to come to the police station. Alsup went to the station and substantially repeated the content of the phone message to Officer Mowen. Alsup neither admitted nor denied making the phone call. The defendant was arrested that evening under a warrant issued earlier in the day. On Monday, September 16, 1985, the county State's Attorney filed an information charging defendant with murder.

■ Defendant's principal argument is that his right to counsel under the sixth amendment attached upon the filing of a formal complaint for an arrest warrant and the issuance of an arrest warrant. We agree.

■ The determination of when the right to counsel attaches is a matter of Federal constitutional law. That right attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (*Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.) The determination of when adversary judicial criminal proceedings begin is a question of State law.

This court has held that the "right to counsel attaches upon the filing of a criminal complaint or information and the issuance of an arrest warrant." (*People v. Jumper* (1983), 113 Ill. App. 3d 346, 349, 447 N.E.2d 531, 533.) Our supreme court has not directly addressed the issue but has intimated its leanings. After *Kirby* our court broadened its prior holdings requiring counsel in post-indictment lineups to lineups following the "initiation of adversary judicial criminal proceedings against an accused by whatever means." (*People v. Burbank* (1972), 53 Ill. 2d 261, 272, 291 N.E.2d 161, 167, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) Recently, the court was directly asked to rule on the question whether the sixth amendment right to counsel attaches with the filing of a criminal complaint for the purpose of obtaining an arrest warrant. The court found it unnecessary to resolve the issue but noted that "there is respectable authority that whether adversarial proceedings commence with the filing of a complaint depends on the degree of prosecutorial involvement." *People v. Owens* (1984), 102 Ill. 2d 88, 101, 464 N.E.2d 261, 266, citing *State v. Johnson* (Iowa 1982), 318 N.W.2d 417, 435 (which held that the filing of a simple complaint by or at the direction of the prosecutor may constitute the initiation of adversary judicial proceedings; the court in *Johnson* specifically refrained from intimating whether a similar result would obtain where police without prosecutorial involvement filed a complaint).

■ Since the supreme court has not specifically ruled on this issue, and in light of the fact that this issue is not fully analyzed in *Jumper,* we have taken this opportunity to look closely at our statutory procedures and existing case law in Illinois in order to determine when the adversary judicial process is initiated under Illinois law. The starting point of our analysis is section 109—1(a) of the Code of Criminal Procedure of 1963 (Code). (Ill. Rev. Stat. 1985, ch. 38, par. 109—

1(a).) Under that section a person arrested under a warrant shall be taken before the judge who issued the warrant, or be taken before the nearest and most accessible judge if the issuing judge is unavailable. The judge must then undertake various procedural matters specified in that section, including advising the defendant of his right to counsel and if the defendant is indigent to appoint counsel to represent him. (Ill. Rev. Stat. 1985, ch. 38, par. 109—1(b)(2).) Clearly, under our Code the adversary judicial process is acknowledged, at least at the stage of the initial appearance before the court, to have been initiated with the filing of a complaint and the issuance of an arrest warrant.

The requirement that the accused be brought before the court is predicated on the issuance of an arrest warrant, as is evident from the language of section 109—1(a) of the Code. The language of that section, as it relates to arrest by warrant, is itself predicated on a formal charge having already been filed. A person who is arrested without a warrant must be taken before a judge "and a charge shall be filed." (Ill. Rev. Stat. 1985, ch. 38, par. 109—1(a).) There is no similar requirement of a filing where a person is arrested pursuant to a warrant. The distinction is significant. A peace officer has authority to arrest an individual if the officer has reasonable grounds to believe that the individual is committing or has committed an offense. (Ill. Rev. Stat. 1985, ch. 38, par. 107—2(1)(c).) Having effected a warrantless arrest the officer may release the individual without an appearance before a court if the officer is satisfied that there are no grounds for a criminal complaint against that individual. (Ill. Rev. Stat. 1985, ch. 38, par. 107—6.) There is no authority for a similar release where the arrest is with an arrest warrant. An individual arrested under an arrest warrant must be brought before the court. Section 107—6 supplements section 109—1(a), and both sections should be construed together. Ill. Ann. Stat., ch. 38, par. 107—6, Committee Comments, at 460 (Smith-Hurd 1980).

The State's contention that the prosecution could decide at any time prior to the arraignment or the preliminary hearing to not seek an information or an indictment is unconvincing. Prosecutorial discretion to refuse to prosecute once the warrant issues and the person is arrested is neither less nor greater than prosecutorial discretion to refuse to prosecute once an information or an indictment has been obtained. In each instance the State's Attorney has exclusive discretion to proceed with, or to discontinue, prosecution. (*People ex rel. Daley v. Moran* (1983), 94 Ill. 2d 41, 45, 445 N.E.2d 270, 272.) We note that the State's Attorney has a duty to prosecute all actions in his county in which the people of the State or county may be concerned. (*People*

*v. Pankey* (1983), 94 Ill. 2d 12, 17, 445 N.E.2d 284, 287-88; Ill. Rev. Stat. 1985, ch. 14, par. 5(1).) The State's Attorney also has a duty to appear before the court to prosecute charges of a felony or misdemeanor where the defendant is required to appear before the court. (Ill. Rev. Stat. 1985, ch. 14, par. 5(6).) While the statutory duties do not in any way lessen the discretion of the State's Attorney to not prosecute, they do reflect the nature of our statutory process for commencing the adversary judicial proceedings. Once a complaint has been filed and an arrest warrant has been issued the individual arrested must be brought before the court. The State's Attorney is expected to pursue that process to its conclusion. There is no legitimate reason for waiting until the inevitable—the appearance before a judge—before acknowledging that the sixth amendment right to counsel has attached.

A number of cases have held that a defendant has a sixth amendment right to counsel upon the filing of a complaint and the issuance of an arrest warrant in felony cases. (*E.g., People v. Boswell* (1985), 132 Ill. App. 3d 52, 476 N.E.2d 1154 (but only if there is proof of significant prosecutorial involvement in procuring the arrest warrant); *People v. Curtis* (1985), 132 Ill. App. 3d 241, 476 N.E.2d 1162, *rev'd on other grounds* (1986), 113 Ill. 2d 136 (the court found it unnecessary to address defendant's sixth amendment claim); *People v. Faulkner* (1980), 86 Ill. App. 3d 136, 139, 407 N.E.2d 126, 129-30; *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 282, 387 N.E.2d 1071, 1077; *People v. Hinton* (1974), 23 Ill. App. 3d 369, 372, 319 N.E.2d 313, 316.) At least three cases have held to the contrary, stating specifically that an arrest warrant by itself does not formally charge a defendant with a crime. (*People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179; *People v. Mitchell* (1983), 116 Ill. App. 3d 44, 47, 451 N.E.2d 934, 936, *mod. on other grounds* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270, *cert. denied* (1985), 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857; *People v. Dockery* (1966), 72 Ill. App. 2d 345, 355, 219 N.E.2d 687, 692.) This court has decided to follow *Jumper* and to adhere to that precedent. Consequently, we reaffirm our holding in *Jumper* that a defendant has a sixth amendment right to counsel upon the filing of a complaint and the issuance of an arrest warrant in felony cases.

We now turn to the defendant's argument that the State violated his sixth amendment right when it obtained incriminating statements from him on two separate occasions. Before addressing the factual circumstances we note the legal principles which control our decision on each of the two conversations. The sixth amendment right

to counsel includes an affirmative obligation on the State not to circumvent the accused's right to have an attorney serve as an intermediary between him and the State. The sixth amendment is not violated where the State obtains information by luck or happenstance. But the right is violated where the State knowingly exploits an opportunity to confront the accused without counsel being present or where the State intentionally creates such an opportunity. (*Maine v. Moulton* (1985), 474 U.S. ___, ___, 88 L. Ed. 2d 481, 495-96, 106 S. Ct. 477, 486-87.) The functional equivalent of interrogation is also prohibited. This particularly includes secret interrogation techniques where the defendant is able to show that the police and their informant (a) "took some action, beyond merely listening," and (b) that this action was "designed deliberately to elicit incriminating remarks." *Kuhlmann v. Wilson* (1986), 477 U.S. ___, ___, 91 L. Ed. 2d 364, 385, 106 S. Ct. 2616, 2630.

■ The first conversation which the defendant seeks to suppress occurred between the time the arrest warrant was issued and the actual arrest. Defendant's friend, Alsup, unbeknownst to the defendant, was cooperating with the police and was wearing an electronic listening device for which the police had earlier obtained a search warrant. The police were parked nearby, and recorded the conversation. The transcript of that record leaves no doubt that Alsup repeatedly inquired of the defendant what had happened to Melodie, and that Alsup repeatedly urged the defendant to talk louder for the obvious purpose to ensure an adequate reception. Clearly, the informant Alsup did more than listen; and, just as clearly, his questions and conduct were deliberately designed to elicit incriminating remarks from the defendant. The contents of this conversation should have been suppressed. Suppression of the information obtained from this conversation does not control the outcome of this case, however. We find that the information so obtained was cumulative, in that the police learned nothing substantively new from what they learned from the monitored conversation which took place immediately prior to the filing of the complaint for, and the issuance of, the arrest warrant.

■ The second conversation occurred during the afternoon of September 15, 1985, while the defendant was in jail, four days after his arrest, awaiting arraignment. During this conversation the defendant admitted to Alsup that he had killed Melodie, told Alsup where the body was, and asked Alsup to move the body to avoid police detection. The record shows that Alsup called the police on the afternoon of September 15, 1985, and talked to Lieutenant Myers. Alsup informed Lieutenant Myers that the defendant had called and re-

quested to see him. Lieutenant Myers initially asked Alsup if he would wear a listening device. However, after calling the State's Attorney's office and being informed that this would be illegal, Lieutenant Myers told Alsup that they could not use a listening device. Lieutenant Myers testified that he explained to Alsup that Alsup would be strictly on his own, that he could not question the defendant on behalf of the police, and that he was not being asked to interrogate the defendant, but that he indicated to Alsup that if Melodie were still alive Alsup should tell the police so that they might get to her. Alsup testified that Lieutenant Myers told him that it was up to him whether he would visit the defendant or not, that he was not ordered to report the substance of the conversation with the defendant, and that Lieutenant Myers did not tell him that he wanted to know where the victim was. The defendant contends that Alsup was acting as an informant during this visit because he was granted immunity, and because Lieutenant Myers, in making arrangements for the visit to occur on a Sunday, informed the jail administrator that the visit was "regarding the investigation." We are persuaded that the circuit court did not err in refusing to suppress the contents of this second conversation.

Although Lieutenant Myers initially suggested using a listening device, any design to enlist the aid of Alsup deliberately to elicit incriminating evidence from the defendant was firmly disapproved after the call to the State's Attorney's office. Whether Alsup was an informant is not controlling. We find that he was not. The controlling factors are whether Alsup and the police took some action beyond merely listening and that this action was designed deliberately to elicit incriminating remarks from the defendant. We are not convinced that the above evidence establishes a basis for a coordinated action between Alsup and the police designed deliberately to elicit incriminating remarks from the defendant. The evidence sufficiently supports a conclusion that Alsup voluntarily and on his own accord told the police the substance of the conversation between him and the defendant.

Because we hold that the defendant's sixth amendment right to counsel attached at the time a formal charge was filed and an arrest warrant was issued, we find it unnecessary to address the defendant's alternative fifth amendment right to counsel claims.

The defendant next contends that he was unduly prejudiced as a result of an unnecessary four-day delay between the time of his arrest and the day of his arraignment. Defendant's theory is that, had he been arraigned earlier, counsel would have been appointed, counsel

would have examined the warrants issued in the case and informed the defendant of Alsup's role, and that, as a result, the September 15 conversation and the State's subsequent filing of an information for murder would not have occurred. We disagree.

■■ ■ The Code requires that once a person is arrested he shall be taken without unnecessary delay before the court to be arraigned. (Ill. Rev. Stat. 1985, ch. 38, par. 109—1(a).) Delay alone, however, is insufficient to penalize the State by excluding incriminating statements obtained during the period between arrest and arraignment. The issue is whether the statements were made voluntarily. Only where the statements are involuntary must they be excluded. Defendant carries the burden to satisfy the trial court of a substantial prejudice as a result of the delay. Only then does the burden shift to the State to demonstrate the reasonableness or necessity of the delay. (*People v. Dees* (1981), 85 Ill. 2d 233, 237-38, 422 N.E.2d 616, 618-19.) Unnecessary delay is only one factor to be considered in determining the voluntariness of an incriminating statement. Seventy-two hours, for example, between the arrest and the arraignment does not *per se* render such a statement involuntary. The question of voluntariness is for the trial court to determine on the totality of the circumstances, and its decision will be reversed only if it is against the manifest weight of the evidence. *People v. Taylor* (1968), 40 Ill. 2d 569, 573-74, 241 N.E.2d 409, 411-12.

■ There is no evidence in the record to indicate that the statements were anything but voluntary. Nor is there any evidence in the record to support the defendant's contention that the delay was unnecessary. The defendant was arrested on Wednesday evening, September 11, 1985, at 8 p.m. and taken to the city jail. According to the testimony of Lieutenant Wrigley, the county jail administrator, the defendant was transferred to the county jail during the afternoon of September 13, 1985. Lieutenant Wrigley also testified that where individuals are arrested on warrants and brought to the county jail, jail officials notify the court that the individual is in custody; the court, in turn, advises county jail officials to bring the person before the court. According to Lieutenant Wrigley the individual is usually brought before the court during the morning. Saturday and Sunday, September 14 and 15 respectively, were court holidays. On the basis of this record we find the delay was not unnecessarily long or prejudicial to the defendant.

Because we conclude that the defendant's sixth amendment right to counsel was not violated during the September 15, 1985, jail conversation with Alsup, and that the defendant was not prejudiced by

the delay between his arrest and his arraignment, we find it unnecessary to address the defendant's claim that evidence concerning the victim's body should have been suppressed under the inevitable discovery rule.

For the reasons stated, the trial court's judgment is affirmed.

Affirmed.

McCULLOUGH, P.J., and WEBBER, J., concur.