THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES A. LITTLETON, Defendant-Appellant.

First District (3rd Division)   No. 85—1886

Opinion filed September 14, 1988.

John P. Buckley and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Dennis Michael Foley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, James Littleton, was convicted of murder and armed robbery and sentenced to concurrent terms of 28 years for murder and 15 years for armed robbery. On appeal, defendant argues that (1) the trial court erred in denying defendant's pretrial motion to suppress his statements and (2) his detention for over 30 hours without a judicial finding of probable cause was unconstitutional and violated his fourth amendment rights. We affirm.

On July 29, 1983, Officer Mark Vail responded to a call of a battery in progress in the 4400 block of Lexington. When Vail arrived, he noticed a long wooden board approximately four feet long and blood on the pavement. Vail also found Claude Rager crouched against a building and bleeding at the top of his head and the side of his face. An ambulance arrived and took Rager to the hospital. Rager died approximately 14 days later, his death resulting from brain swelling and brain death caused by "blunt trauma to the head."

At trial, the State's evidence established that three persons witnessed defendant beat and rob Rager. All three eyewitnesses testified that they saw a "stranger" walking down the street. They then saw defendant and some of defendant's friends surround the man and kick him to the ground. Defendant was seen hitting the man with a "big

board" in the head. Defendant and his friends then went through Rager's pockets and defendant took a ring off of Rager's hand. All three witnesses identified defendant in open court as the individual who hit Rager over the head with the board.

Detective Johnson also testified for the State. Johnson testified that he and his partner, Detective Glenn Godbold, arrested defendant on July 30, 1983. When Johnson conducted a protective search of defendant, he recovered two rings and approximately $300 from defendant's sock. Johnson testified that defendant was advised of his *Miranda* rights twice prior to any questioning. In an oral statement, defendant denied any involvement in the robbery and beating of Rager.

On July 31, 1983, defendant informed Johnson that he wanted to tell Johnson "exactly what happened." Defendant was again advised of his *Miranda* rights. Defendant then stated that after one of his friends grabbed Rager, defendant hit Rager with a "2 by 4." Rager fell to the ground and defendant and his friends went through Rager's pockets. Defendant's share of the take amounted to approximately $300 and two rings.

On July 31, defendant also spoke with Assistant State's Attorney Thomas Gibbons. Defendant related the same account of the incident to Gibbons as was told to Johnson. Defendant further told Gibbons that he was willing to give his statement in the presence of a court reporter. Defendant was read his *Miranda* rights once again and he gave a statement that was reduced to writing. Defendant reviewed the written statement, made several changes and additions and ultimately signed it.

Prior to trial, defendant made a motion to suppress this statement. In his offer of proof, defendant testified that he did not receive any food or drink from the time of his arrest to the time that he signed the typewritten statement. Defendant stated that he was handcuffed in the initial interview and that Godbold threatened him with physical harm. Defendant stated that he was threatened with physical harm repeatedly and that the assistant State's Attorney did not read defendant his rights. Defendant testified that he requested a lawyer but his request was denied and that the written statement was left with him for over four hours before he signed it.

The State's evidence established that defendant was arrested at 6 a.m. on July 30, 1983. He was taken to the police station and interviewed approximately seven times. Prior to each of those statements, defendant was read his *Miranda* rights. During the initial interview, defendant was not handcuffed nor was he threatened. At approxi-

mately 12 p.m. on July 30, defendant was placed in the lock-up facility at the police station. The officer in charge of the lockup testified that if a person in the lockup were to request food, he would be fed and that all persons in the lockup are fed once every eight hours.

Following defendant's admission to the lockup, he was allowed to make a phone call. All persons in the lockup were fed between 8:30 p.m. and 9 p.m.

At 12:30 a.m. on July 31, 1983, Johnson and Godbold removed defendant from the lockup. Defendant gave statements to Johnson and Godbold and Assistant State's Attorney Gibbons. At 11:30 a.m., defendant's typewritten statement was presented to him for any changes and his signature. At no time did defendant complain of physical discomfort, hunger, thirst or denial of his right to speak with an attorney.

The trial court denied defendant's motion to suppress, finding that (1) defendant made a knowing waiver of his rights; (2) the statements made by defendant were voluntarily made; and (3) defendant was brought before a magistrate without undue delay.

Following the close of evidence and closing arguments, the jury returned a verdict of guilty on the charges of murder and armed robbery. This appeal followed.

Defendant first argues that the trial court erred in denying his motion to suppress. It is defendant's position that the statements made were not voluntary in that defendant was deprived of food, sleep, intervention of a neutral magistrate, his *Miranda* rights and a lawyer. We find that the record does not support defendant's contentions.

The burden is on the State to establish that a defendant's confession was made voluntarily. The State must show by "a preponderance of the evidence" that the accused's will was not overcome at the time he confessed and that the confession was made free of any compulsion or inducement. (*People v. King* (1986), 109 Ill. 2d 514, 525, 488 N.E.2d 949, 955.) To determine such, the totality of the circumstances, including but not limited to any threats, promises or physical coercion, must be considered. (*People v. Rhodes* (1983), 119 Ill. App. 3d 1002, 1008-09, 457 N.E.2d 1300, 1305-06.) The trial court is vested with the discretion to determine whether, based upon the totality of the circumstances, a defendant's statement was made voluntarily. Thus on review, the sole question is whether the trial court's determination is contrary to the manifest weight of the evidence. *People v. McDermott* (1985), 141 Ill. App. 3d 996, 1005, 490 N.E.2d 1293, 1298-99.

■ In the present case, we find the evidence sufficient to support the trial court's determination that defendant's statement was made voluntarily. The record reflects that following defendant's arrest, he gave approximately seven statements and each statement was preceded by a reading of defendant's rights. Defendant was placed in the lockup at the police station while he was not being interviewed. During this time, he was given ample opportunity to sleep, drink and eat. Defendant was further allowed to smoke a cigarette and make a phone call. Defendant evidenced no signs of physical abuse nor was he denied any request to speak with a lawyer.

In evaluating the merits of defendant's motion to suppress, the trial court stated:

> "There is not substantial evidence that the defendant was handcuffed in such a manner that *** led to the statement being involuntary. *** One would think if he had been handcuffed in the manner he had testified to there would necessarily be some physical evidence to corroborate that. There is none. As to the issue as to whether or not the defendant slept or not, it is clear that there was substantial opportunity for him to sleep ***. As to whether or not the defendant had eaten before his arrest, he has testified that he had not. I must state that that testimony is not particularly credible. That would mean that he voluntarily chose not to eat for an 18 hour period. As to whether or not he had the opportunity to eat while in the police station, it is clear to me that he did. *** As I have already somewhat indicated, the testimony of the defendant lacks credibility in several other important instances."

The record evinces that the trial court gave due consideration to the contentions raised by defendant and denied defendant's motion based upon all of the evidence before the court. We therefore conclude that the trial court's denial of defendant's motion to suppress was not against the manifest weight of the evidence.

■ Defendant next argues that his prolonged detention without a judicial finding of probable cause was unconstitutional and violated his fourth amendment rights. We disagree.

Section 109—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 109—1) provides that "[a] person arrested without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county, and a charge shall be filed." (Ill. Rev. Stat. 1985, ch. 38, par. 109—1.) Defendant bears the burden of proving that a substantial prejudice occurred as a result of the delay. Once defendant has established that a

substantial prejudice occurred as a result of the delay, the State has the burden of showing the reasonableness or necessity of the delay. *People v. Dees* (1981), 85 Ill. 2d 233, 237-38, 422 N.E.2d 616, 618-19.

Delay alone, however, is an insufficient basis for excluding incriminating statements obtained during the period between arrest and presentation before a magistrate. (*People v. Dove* (1986), 147 Ill. App. 3d 659, 667, 498 N.E.2d 279, 284.) The crucial question is whether the statement was made voluntarily. A confession obtained during detention in violation of constitutional or statutory prompt presentation requirements will not be suppressed unless it was involuntary. (*People v. Goree* (1983), 115 Ill. App. 3d 157, 161, 450 N.E.2d 342, 344.) The question of voluntariness is for the trial court to determine based upon the totality of the circumstances and its decision will not be disturbed on review unless it is against the manifest weight of the evidence. *People v. Dove* (1986), 147 Ill. App. 3d 659, 667, 498 N.E.2d 279, 284.

In the instant case, there is no evidence in the record to support defendant's contention that the delay was unnecessary. Nor is there any evidence in the record which would indicate that defendant's statement was not voluntary. As the trial judge correctly observed, defendant was the subject of an ongoing investigation. There were at least three other possible offenders involved in this crime. Defendant was providing information about the offense concerning the other individuals involved. Thus, the trial court stated that it was proper for the police to "complete the total investigation before bringing the defendant before a magistrate." In light of the evidence before us and our previous finding that defendant's statement was made absent any physical or any other form of coercion, we conclude that the trial court's decision was not against the manifest weight of the evidence.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.