**UNITED STATES ex rel. Gerald Wayne DOVE, Petitioner,**

v.

**James THIERET, Warden, Respondent.**

No. 87-2414.

United States District Court,
C.D. Illinois,
Danville Division.

Aug. 3, 1988.

Gerald Wayne Dove, Menard, Ill., pro se.

Judith L. Libby, Asst. Defender, Springfield, Ill., for petitioner.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondent.

## ORDER

BAKER, Chief Judge.

The petitioner, Gerald Wayne Dove, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 10, 1985, an Illinois state court convicted Gerald Dove (Dove) of murdering his wife, Melodie Dove (Melodie). In his petition for habeas relief, Dove alleges that the Illinois state proceeding violated tenets of the Constitution because the trial court admitted evidence obtained in violation of Dove's Fifth and Sixth Amendment rights. Specifically, Dove alleges that the government gained incriminating evidence through unnecessary delays in incarceration[1] and the wrongful use of an informant. Dove alleges that such tactics impaired his privilege against self-incrimination and his right to counsel. (Docket No. 1, p. 5.) Dove has filed a memorandum in support of his petition for a writ of habeas corpus (Docket Nos. 8 and 9) and the state has responded. (Docket No. 10.)

## FACTS[2]

On August 30, 1985, the Decatur Police Department received a report that Melodie Dove was a missing person. Melodie was last seen by her mother at approximately 11:00 p.m. on August 29, 1985, as Melodie was leaving her mother's house to pick up a television set from Dove. A taxi cab driver recalled driving Melodie to Dove's residence, and one of Dove's neighbors reported seeing a woman fitting Melodie's description arrive at Dove's home after 11:00 p.m. on August 29th.

On September 11, 1985, Officer Mowen of the Decatur Police Department received an anonymous phone call at 3:00 a.m. from an unknown male. The caller explained that Dove had taken Melodie outside of the county, had tied and gagged her, and was taking food and water to her. Officer Mowen subsequently learned that the caller might be Gerald Alsup, a long-time friend of Dove's.

Later in the day on September 11, 1985, Mowen phoned Alsup and asked him to come to the police station. Alsup went to the station and told police substantially the same information that Officer Mowen had received in the anonymous phone message earlier in the morning. Alsup neither admitted nor denied making the call.

Following their conversation with Alsup, the police obtained a warrant for Dove's arrest. The arrest warrant was based upon a complaint signed by Robert Davis, a Decatur Police Officer. The complaint was based upon information gained from Officer Davis' personal knowledge and upon evidence in police reports regarding the investigation of Melodie's disappearance. Officer Davis presented the complaint to a judge who then issued an arrest warrant for Dove. (See Report of Proceedings in People v. Dove, Volume III, pp. 56–60.)

After the Decatur police received the arrest warrant, Mowen recruited Alsup to obtain evidence from Dove. Alsup agreed

---

1. Dove's right to be presented promptly before a judge for an initial appearance is created by Illinois statute. Dove admits that "matters of Illinois statutory construction, presented as such, are not appropriate subjects of federal habeas corpus review." However, Dove "asserts that his failure to be presented promptly for arraignment and appointment of counsel are facts intrinsic to the determination that his right to counsel was violated by the State's actions to obtain incriminating statements...." (Docket # 8, p. 4). The court accepts Dove's analysis and will consider the issue of Dove's pre-arraignment incarceration within the discussion of Dove's Fifth and Sixth Amendment claims.

2. Unless otherwise noted, the stated facts are derived from the opinion issued by the Illinois Appellate Court during Dove's direct appeal.

See People v. Dove, 147 Ill.App.3d 659, 101 Ill. Dec. 97, 498 N.E.2d 279 (4th Dist.1986). Findings of fact by a state court following a full and fair hearing are presumed to be correct on federal review unless the state court proceeding falls within one of the statutory categories that rebut the presumption of reliability. See 28 U.S.C. § 2254(d) (Supp.1987); Sumner v. Mata, 449 U.S. 539, 545–46, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981). A state court's factual determination can be set aside only if it is found to be clearly erroneous. United States v. Strawser, 739 F.2d 1226, 1229 (7th Cir.1984), cert. denied, 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984). In the present case, neither the petitioner nor respondent take issue with the material facts stated by the Illinois Appellate Court in People v. Dove.

to wear an electronic listening device and to engage Dove in a conversation regarding Melodie's condition. The transcript of that conversation leaves no doubt that Alsup repeatedly inquired about what had happened to Melodie, and that Alsup repeatedly urged Dove to talk louder for the obvious purpose of insuring adequate reception. It is clear that Alsup engaged Dove in conversation with the intent to elicit incriminating remarks from Dove. During the conversation, Dove told Alsup that Melodie was alive and that he had repeatedly struck Melodie.

Dove was arrested on Wednesday, September 11, 1985, at 8:00 p.m., shortly after his conversation with Alsup. Dove was taken to the Decatur Police Station where the Decatur Police attempted to interrogate him. Dove asked for an attorney and the interrogation was terminated. During the afternoon of September 13, 1985, Dove was transferred from the Decatur Police Station to the county jail. Dove was not taken to court for an initial appearance until Monday, September 16, 1985. At that time, a three-count information charging Dove with murder was filed, and counsel was appointed to represent him. (*See* Report of Proceedings in *People v. Dove*, Vol. I, pp. C9–C14.)

On September 15, 1985, Alsup notified the Decatur Police that Dove had telephoned Alsup at home and had asked Alsup to visit the county jail. Since September 15th fell on a Sunday, under jail rules, Alsup needed special permission to visit Dove. The Decatur Police arranged Alsup's visit and advised the jail authorities that Dove's visit was "regarding the investigation." Initially, the police asked Alsup to wear a recording device during the visit, but the plan was abandoned after the State's Attorney advised the police that such a procedure would likely be illegal. After conferring with the State's Attorney, Decatur Police Officers testified that they explained to Alsup that he would be strictly on his own, that he could not question Dove on behalf of the police, that he was not being asked to interrogate Dove, and that he was under no obligation to report the content of any conversation with Dove.

The police also said that they requested Alsup to inform them if Melodie was still alive so that the police might rescue her. Alsup testified that the police did not require him to visit Dove or to report to them the substance of his conversation with Dove. Alsup also says that on September 15th the police did not ask him to find out where Melodie was.

During the September 15th conversation with Alsup, Dove admitted that he had killed Melodie, told Alsup where the body was located, and asked Alsup to move the body to avoid its discovery by the police. (Report of Proceedings in *People v. Dove*, Vol. II, C320–32.) Alsup decided to report the details of his conversation with Dove to the police. Alsup negotiated an immunity agreement for himself and provided the police with the information regarding Melodie's murder. Based upon that information, the police located Melodie's body. The two conversations between Alsup and Dove were admitted into evidence during Dove's murder trial and he was convicted and sentenced to twenty years of incarceration.

## SIXTH AMENDMENT RIGHT TO COUNSEL

In relevant part, the Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court has long recognized the importance of counsel in criminal proceedings. In *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), the court concluded that:

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by [sic] counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put to trial without a proper charge, and convicted

upon incompetent evidence, or evidence irrelevant to the issue or otherwise admissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he may have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he may not be guilty, he faces the danger of conviction because he does not know how to establish his innocence.

Undeniably the right to counsel, as guaranteed by the Sixth and Fourteenth Amendments, "is indispensable to the fair administration of our adversary system of criminal justice." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977), *reh'g denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977).

Dove alleges that his Sixth Amendment right to counsel was violated when the state used an informant to elicit incriminating statements from Dove in the absence of counsel. Before deciding whether Alsup's activities contravened Dove's Sixth Amendment right, the court must determine whether a constitutional right to counsel had accrued to Dove at the time he made the incriminating statements to Alsup.

### A. The Initiation of the Right to Counsel

A long line of Supreme Court cases have developed the principle that an individual's Sixth and Fourteenth Amendment right to counsel attaches at or after the time that adversarial judicial proceedings are initiated against that individual. *See United States v. Wade*, 388 U.S. 218, 223–227, 87 S.Ct. 1926, 1930–31, 18 L.Ed.2d 1149 (1967); *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972); *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). The initiation of adversary judicial proceedings occurs when "the government has committed itself to prosecute" and "the adverse positions of government and defendant have solidified." *Kirby v. Illinois*, 406 U.S. at 689, 92 S.Ct. at 1882. "By its very terms, [the Sixth Amendment] becomes applicable only when the government's role shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 430, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986).

Since the mechanisms of criminal prosecution vary from state to state, the Supreme Court has not defined the exact point at which a prosecution is initiated. However, it is settled that five events are always starting points at which the accused receives the Sixth Amendment right to counsel: (1) a formal charge; (2) a preliminary hearing; (3) an indictment; (4) an information; or (5) an arraignment. *See Kirby v. Illinois*, 406 U.S. at 689, 92 S.Ct. at 1882; *Brewer v. Williams*, 430 U.S. at 398, 97 S.Ct. at 1239. Recently, the Supreme Court held that "the Sixth Amendment right to counsel does not attach until after the initiation of formal charges." *Moran v. Burbine*, 475 U.S. at 431, 106 S.Ct. at 1146.

Dove argues that adversarial judicial criminal procedures were initiated when the Decatur Police Department filed a complaint against him and received a warrant for his arrest. The court must examine Illinois criminal procedure to determine whether the issuance of an arrest warrant marks the initiation of Illinois criminal judicial proceedings. *See Meadows v. Kuhlmann*, 812 F.2d 72, 76–77 (2nd Cir.1987), *cert. denied*, —— U.S. ——, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *United States ex rel. Sanders v. Rowe*, 460 F.Supp. 1128, 1139 (N.D.Ill.1978) (Although the determination of the time at which adversary judicial proceedings begin is a question of federal constitutional law, federal courts "defer to a state statute or opinion fixing the time that adversary judicial proceedings commence, if the time chosen is prior to that required by *Kirby*.").

A review of Illinois state law indicates that the adversarial judicial criminal proceedings do not commence upon the issuance of an arrest warrant based upon a complaint. An Illinois court is required to issue an arrest warrant when a complaint is submitted to the court. S.H.A. ch. 38, par. 107–9 (Supp.1988). Once an individual

is arrested pursuant to an arrest warrant, the person arrested "shall be taken without unnecessary delay before the judge who issued the warrant." At that point, the judge is required to (1) inform the accused of the charge against him and provide the accused with a copy of the charge; (2) advise the accused of his right to counsel; (3) consider the conditions of bail; and (4) advise the accused of the consequences of escape from custody or failure to appear before court. S.H.A. ch. 38, par. 109–1 (1985).[3] After the initial appearance before a judge, an individual in custody for the alleged commission of a felony must receive either a preliminary examination or be an indicted within thirty (30) days after being taken into custody. S.H.A. ch. 38, par. 109–3.1(b) (1985). During the preliminary examination, a procedure similar to *Kirby*'s "preliminary hearing," a judge must determine whether adequate evidence exists to hold the accused to answer. Finally, the felony prosecution is commenced by the filing of an information or an indictment.[4] S.H.A. ch. 38, par. 111–2(a) (1985). Under Illinois law, "an indictment shall be signed by the foreman of the Grand Jury and an information shall be signed by the State's Attorney and sworn to by him or another." S.H.A. ch. 38, par. 111–3(b) (1985).

Several conclusions may be drawn about the point at which adversarial criminal judicial proceedings begin in Illinois. Initially, the filing of a complaint and the receipt of an arrest warrant is an *ex parte* procedure that does not require action by the prosecutor. The Illinois statute does not require that the complaint be made by an individual in an official capacity. Presumably the complaint upon which an arrest warrant is premised could be "subscribed and sworn to" by anyone. A warrant is issued as long as "it appears from the contents of the complaint and the examination of the complainant or other witnesses ... that the person against whom the complaint was made has committed an offense." S.H.A. ch. 38, par. 107–9(c) (Supp.1988). While, in practice, private citizens rarely file a complaint, it is clear that a prosecutor need not file the complaint and that police officers frequently file the complaints upon which arrest warrants are premised. *See People v. Collins*, 70 Ill.App.3d 413, 423, 26 Ill. Dec. 165, 387 N.E.2d 995 (1st Dist. 5th Div.1979); *People v. Hothersall*, 103 Ill. App.3d 183, 185, 58 Ill.Dec. 891, 430 N.E.2d 1142 (2nd Dist.1981).

The fact that an arrest warrant is obtained in an *ex parte* proceeding, generally without the aid of a prosecutor, cuts strongly against an argument that obtaining a warrant initiates adversarial criminal

---

**3.** In 1988, the Illinois Legislature amended the provisions of Chapter 38, par. 109–1. Prior to January 1, 1988, the statute required that "a person arrested without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county, and a charge shall be filed." Thus, the statute envisioned that an individual arrested without a warrant would be charged at the point at which that person was brought before a judge. On the other hand, a person arrested on warrant was not charged during his initial appearance before the judge, but rather was informed of the charge against him and provided with a copy of the charge. Some Illinois courts have noted this distinction and concluded that because a "charge" was not filed against an individual arrested pursuant to a warrant, the granting of an arrest warrant signaled the initiation of adversarial judicial criminal proceedings. *See People v. Dove*, 147 Ill.App.3d 659, 101 Ill.Dec. 97, 498 N.E.2d 279 (4th Dist.1986). The Illinois Legislature has recently corrected the disparity between those arrested with and without war-

rants by requiring that a charge be filed against both categories of individuals upon their initial appearance before a judge. *See* S.H.A. ch. 38, par. 109–1(a) (Supp.1988). Although the current legislation was not in effect at the time the Decatur police received an arrest warrant against Dove, and consequently has no effect upon the court's decision in the present case, the Legislature's revision of Chapter 38, par. 109–1 indicates that legislators intended to distinguish between the complaint required for an arrest warrant and the charge upon which the criminal prosecution is premised. Of course, once the accused is brought into court on the arrest warrant, the complaint underlying the arrest warrant often becomes the "tentative charging document." *See* W. Lafave & J. Israel, *Criminal Procedure* at 278 (Hornbook Series Student Edition 1985).

**4.** Prosecutions for non-felony offenses may be commenced by filing an indictment, an information, or a complaint. S.H.A. ch. 38, par. 111–2(b) (1985).

judicial proceedings. Since the warrant hearing is an *ex parte* proceeding, the subject of the warrant would not, and could not, be aided by the presence of counsel. The Supreme Court has recently indicated that the primary purpose of the Sixth Amendment is to provide the accused aid during intricate legal procedures in which expert counsel is required in order to assist the accused in making important choices posed during adversarial proceedings. *See Moran v. Burbine*, 475 U.S. at 430, 106 S.Ct. at 1146. Since the accused has no opportunity to make choices which affect his standing during an arrest warrant hearing, the basis underlying the Sixth Amendment right to counsel is non-existent at that stage. Moreover, since prosecutors are rarely involved during the arrest warrant proceeding, the accused does not find himself pitted against professional prosecutorial opposition. *See United States v. Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298, *quoting Johnson v. Zerbst*, 304 U.S. 458, 462–3, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938) ("Indeed the right to counsel 'embodies a realistic recognition of the obvious truth that the average defendant does not have professional legal skill to protect himself when brought before a tribunal with the power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel.'"); *Lomax v. State of Alabama*, 629 F.2d 413, 415–16 (5th Cir.1980), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981).

Other facets of Illinois criminal procedure also indicate that an accused's Sixth Amendment right to counsel does not begin at the moment that the police secure an arrest warrant. Under Illinois law, a police officer may obtain an arrest warrant by demonstrating that probable cause exists to believe that an individual has committed a crime. *People v. Collins*, 70 Ill.App.3d at 423, 26 Ill.Dec. 165, 387 N.E.2d 995. Similarly, a police officer may make a warrantless arrest if the officer has probable cause to believe that the individual arrested has committed a crime. Thus, the the issuance of arrest warrant does not signal that a criminal proceeding has progressed beyond the point at which a warrantless arrest could be made. Since the Supreme Court has refused to hold that the right to counsel attaches at the time of arrest, *see United States v. Gouveia*, 467 U.S. 190, 104 S.Ct. at 2298; *United States v. Pace*, 833 F.2d 1307, 1311–12 (9th Cir.1987), it would be illogical to hold that an instrument, issued upon the same standard of proof, could alone constitute the initiation of the right to counsel. Both an arrest pursuant to warrant and a warrantless arrest are effectuated by police officers with probable cause to believe that the individual arrested has committed a crime. It makes no sense to provide an accused with the right to counsel simply because police officers sought a warrant prior to making the arrest instead of making the arrest upon probable cause without a warrant.

■ The court concludes that, under Illinois law, unless the state prosecutor was instrumental in securing an arrest warrant, arrest under a warrant does not give rise to the Sixth Amendment right to counsel until the person arrested is brought before a judge and notified of the formal charges against him as required by Illinois statute.[5] *See* S.H.A. ch. 38, par. 109–1 (1985).

---

5. It is possible that the Sixth Amendment right to counsel may accrue before the accused is brought before a judge and notified of the charges against him if the accused is subject to a critical stage in the Illinois criminal justice process "where the results might well settle the accused's fate and reduce the trial to a mere formality." *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985), *quoting United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967). Although the Seventh Circuit has yet to determine whether an individual in police custody may have a Sixth Amendment right to counsel prior to the initiation of formal adversarial judicial proceedings, *see United States ex rel. Hall v. Lane*, 804 F.2d 79, 82 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1382, 94 L.Ed.2d 696 (1986) it is clear that the Sixth Amendment right to counsel does not accrue prior to the initiation of formal adversarial judicial proceedings simply because police interrogate an individual. *See Moran v. Burbine*, 475 U.S. at 431–32, 106 S.Ct. at 1146–47. Since Dove alleges only that his Sixth Amendment right should have attached upon the initiation of interrogation, it is not necessary for the court to determine whether other actions occurring prior to the initiation of adversary criminal judicial pro-

It is at the initial appearance that the prosecutor normally becomes involved in the proceedings and decisions are made that will affect the individual's fate and may determine the outcome of the trial. In Illinois, the initial appearance before a judge corresponds to the filing of a "formal charge" in *Kirby. See Kirby v. Illinois,* 406 U.S. at 689, 92 S.Ct. at 1882. Normally, unless the prosecution is involved prior to the initial hearing, that is the point when the state begins to prosecute and the defendant gains the right to the presence of an attorney. *See Moran v. Burbine,* 475 U.S. at 428, 106 S.Ct. at 1145; *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 120–21 (7th Cir.1987).

At least one federal court has reached the conclusion that an individual does not gain the Sixth Amendment right to counsel simply because he is in custody pursuant to an arrest warrant. *See United States v. Pace,* 833 F.2d at 1312; *See also, Sulie v. Duckworth,* 689 F.2d 128, 130 (7th Cir. 1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983) (In *Sulie,* the petitioner had been subjected to custodial interrogation, but it is not clear whether he was held pursuant to an arrest warrant.). Illinois courts have also held that the Sixth Amendment right to counsel does not attach simply because an individual is in custody pursuant to an arrest warrant. *See People v. Thompkins,* 121 Ill.2d 401, 430–33, 117 Ill.Dec. 927, 521 N.E.2d 38 (1988); *People v. Boswell,* 132 Ill.App.3d 52, 57–60, 87 Ill.Dec. 162, 476 N.E.2d 1154 (1st Dist. 1985) ("Where the extent of the prosecutor's involvement in the procurement of the warrant is no more than in the assistance and preparation of the complaint ... the arrest must be characterized as purely investigatory without any commitment by the state at this point to pursue prosecu-

tion."); *People v. Racanelli,* 132 Ill.App.3d 124, 130–31, 87 Ill.Dec. 187, 476 N.E.2d 1179 (1st Dist.1985). Given the lack of prosecutorial involvement and lack of adverse judicial procedure that occurs prior to the initial appearance, the court concludes that adversarial judicial criminal proceedings do not generally occur in Illinois until an accused is taken to an initial appearance before a judge.

■ In the present case, Dove received an initial appearance and was formally charged on September 16, 1985. The facts fail to provide a basis for finding that, prior to September 16th, Dove's Sixth Amendment right to counsel had accrued. There is no evidence that Dove was subjected to intricate criminal law procedures in which an attorney would help an accused to make important strategic decisions. The record is void of any significant activity by prosecutors. The complaint leading to Dove's arrest was verified by a Decatur Police Officer based upon information gained by the Decatur Police Department during its investigation. The record does not support a finding that the prosecutors were involved in the police decision to wire Alsup to gain incriminating information from Dove prior to Dove's arrest.[6] The State's Attorney's only significant participation prior to Dove's initial appearance occurred when Decatur Police Officers asked the prosecutor about Officer Meyer's idea of wiring Alsup during his September 15th jail visit. The State's Attorney acted only as an advisor to the police. The police suggested Alsup wear a wire during his jail visit with Dove, and it was the police who controlled the proceedings immediately before and after Alsup's visit on September 15th. The prosecutor did not initiate or encourage Alsup's interview of Dove to further prosecutorial ends.

ceedings may trigger the Sixth Amendment right to counsel.

**6.** Dove alleges that the State's Attorney was involved in obtaining the search warrant that permitted Alsup to wear an eavesdropping device during his September 11th conversation with Dove. It is true that the State's Attorney did sign an "authorization for a Petition and Order Approving the use of an Eavesdropping Device,"

*see* Report of Proceedings in *People v. Dove,* Vol. I, C67, but the authorization appears to be a formality accompanying all requests to use an eavesdropping device. Testimony regarding the acquisition of the search warrant indicates that the Decatur police sought the warrant, provided the information upon which the warrant was based, and supervised the September 11th conversation between Alsup and Dove.

Prior to Dove's initial appearance, his position did not raise the Sixth Amendment right to counsel. *See Moran v. Burbine*, 475 U.S. at 430–32, 106 S.Ct. at 1146–47. Police may not interfere with a defense attorney's efforts to act as a "medium between [the suspect] and the state" during an interrogation, *Maine v. Moulton*, 474 U.S. at 176, 106 S.Ct. at 487. But since Dove's right to counsel had not yet attached, there was no interference with his Sixth Amendment right to counsel.

## B. Unnecessary Delay Prior to Prosecution

Dove contends, in an alternative position, that his Sixth Amendment right to counsel should have accrued prior to the actual initiation of adversarial judicial proceedings because the police wrongfully delayed the initiation of such proceedings. The Illinois Legislature has decreed that an individual who is arrested must be taken "without unnecessary delay before the nearest and most accessible judge...." S.H.A. ch. 38, par. 109–1 (1985). In the present case, Dove was arrested in the evening on Wednesday, September 11, 1985. The police failed to bring Dove before a judge for an initial appearance on Thursday, September 12th or Friday, September 13th. Dove was transferred from the Decatur Police Department to the county jail during the afternoon of September 13, 1985 and held there without a hearing during the weekend. Dove was taken to court for his initial appearance on Monday, September 16, 1985. Dove alleges that his confession was the result of incarceration for four days prior to an initial appearance.

■ There is some precedent to support the claim that "intentional and unnecessary delay by the government in bringing an indictment may invoke the Sixth Amendment right to counsel." *Flittie v. Solem*, 775 F.2d 933, 943 (8th Cir.1985), *cert. denied*, 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986); *United States v. Dobbs*, 711 F.2d 84, 85 n. 1 (8th Cir.1983) (dictum). In the present case, there is no evidence that police officials intentionally delayed Dove's initial appearance in order to gain incriminating evidence although the delay may have had that collateral effect.[7]

■ Police officials have provided no reason for failing to allow Dove an initial appearance during the first two days of his incarceration.[8] While a four-day period of incarceration may constitute an unnecessary delay prior to an initial appearance, the court finds that the evidence does not support a conclusion that the delay was an intentional attempt by police to increase the likelihood of a confession by Dove. The police did not use the delay in order to interrogate Dove and break down his will to resist making an incriminating statement. The police became privy to Dove's volunteered incriminating statements fortuitously. Dove most certainly was aware of the impending court proceedings and contacted Alsup in an effort to recruit him to hide Melodie's body. It was Dove's attempt to conceal evidence, not the government's attempt to subvert his Sixth Amendment rights, that led to the incriminating

---

**7.** Dove contends that even if police officers did not intentionally delay his initial appearance in order to gain incriminating evidence, his Sixth Amendment right to counsel should still accrue before his initial appearance because, had he immediately received an attorney, the attorney would have examined the record and told Dove that Alsup was an informant, thus reducing the likelihood that Dove would have made incriminating statements to Alsup. The court finds no merit in this contention. It was Dove who initiated the contact with Alsup, not the police. It was Dove not the police who initiated the prison conversation between Dove and Alsup. Since the government did nothing to endanger rights protected by the Sixth Amendment, Dove's access to counsel should not accrue as the result of Dove's unilateral decision to make an incriminating statement. Moreover, simply because counsel may have been helpful in uncovering Alsup's role as an informant, Dove had no immediate right to counsel. The Sixth Amendment right to counsel is not intended to provide an accused with a pre-indictment private investigator. *United States v. Gouveia*, 467 U.S. at 191, 104 S.Ct. at 2299.

**8.** The record does suggest that police officers failed to present Dove for an initial appearance during the third and fourth days of incarceration because the third and fourth days fell over a weekend during which the court was closed.

admissions. Given this scenario, the court cannot say that Dove's Sixth Amendment right to counsel should have attached earlier because of deliberate delay by the police.

### FIFTH AMENDMENT RIGHT TO COUNSEL

■ In relevant part, the Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To insure that an individual is not coerced into confessing or providing incriminating information against himself, the Supreme Court has established procedural protections to guarantee respect for the right against self-incrimination. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The procedural protections enumerated in *Miranda* include the right to counsel during custodial interrogation. *Id.* at 479, 86 S.Ct. at 1630. The right to counsel, developed pursuant to the Fifth Amendment, vests when an individual is taken into custody. *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 125 (7th Cir.1987). Once in custody, a suspect has "the right to have counsel present at any custodial interrogation." *Edwards v. Arizona,* 451 U.S. 477, 485-6, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). The right to counsel during custodial interrogation is designed to "assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." *Colorado v. Springs,* 479 U.S. 564, 107 S.Ct. 851, 856, 93 L.Ed.2d 954 (1987), *quoting, Miranda v. Arizona,* 384 U.S. at 469, 86 S.Ct. at 1625.

■ Dove contends that his Fifth Amendment rights were violated, both before and after his arrest, when he made incriminating statements to Alsup. Since Dove was not in custody during the first conversation with Alsup, Dove's Fifth Amendment rights had not yet attached. The court need not consider whether Dove's incriminating statements, made prior to his arrest, were used in violation of his Fifth Amendment rights.

It is clear, however, that Dove was in custody during the second conversation. *See United States ex rel. Espinoza v. Fairman,* 813 F.2d at 122 (The court accepts that the accused was in custody by virtue of the fact that he was being held in the county jail.). Dove was arrested during the evening of September 11, 1985. On that evening, he was taken to the Decatur Police Department where police officers informed him of his *Miranda* rights. The police began to question Dove, but Dove asked for an attorney and the police abandoned the interrogation and initiated no further questioning.

On September 15th, Alsup visited Dove in the county jail. Dove admitted that he had killed Melodie and asked Alsup to move Melodie's body to make its detection more difficult. Nothing indicates that Alsup sought any information beyond what was volunteered by Dove. Before repeating his conversation with Dove, Alsup sought and received immunity. Alsup contends that he had gone to the jail with the intention not to report the details of his conversation with Dove to the police, but Alsup changed his mind after learning that Melodie had been murdered.

#### A. Custodial Interrogation

Once Dove asked for counsel on September 11th, the police were prohibited from interrogating Dove further until Dove either received counsel or "initiate[d] further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. at 484-5, 101 S.Ct. at 1885. In order to find that the September 15th conversation between Alsup and Dove violated Dove's Fifth Amendment rights, the court would be required to find that Dove was subjected to "questioning initiated by law enforcement officers" while he remained in custody. *Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980).

■ First, the court concludes that the conversation between Dove and Alsup on September 15th did not constitute an interrogation. Dove initiated the conversation with Alsup in order to enlist Alsup in

Dove's criminal activity. Alsup did not attempt to control the conversation to gain incriminating admissions from Dove. *See United States v. Burton*, 724 F.2d 1283, 1289 (7th Cir.1984) (The court noted that the fact that the informant "asked no questions and made no effort to guide the conversation" suggested that the informant did not initiate interrogation.). Alsup did not seek to question Dove; Dove sought out Alsup to enlist Alsup's aid. Such a scenario does not suggest interrogation.

█ Second, the court finds that Alsup was not acting as an agent of the police during Alsup's September 15th conversation with Dove.[9] The police told Alsup that he was not required to visit Dove or to report the contents of his conversation to the police. The police did not provide Alsup with a list of questions to ask Dove or encourage Alsup to follow a specific agenda during his conversation with Dove. *See Flittie v. Solem*, 751 F.2d 967, 973 n. 11 (8th Cir.1985), *cert. denied*, 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986) (In finding that there existed no government compulsion, the court discussed the fact that the informant "received no specific instructions from the government regarding the direction of the conversation" with the suspect.); *United States v. Burton*, 724 F.2d at 1289. Alsup was not encouraged to elicit incriminating information from Dove for Alsup's benefit. *See United States v. Taylor*, 800 F.2d 1012, 1016 (10th Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987) (In reaching the conclusion that the informant was not the government agent, the court considered the fact that "[n]o agreement was made between [the informant] and the government and no benefits accrued to [the informant] for his cooperation."). Indeed, Alsup was motivated by a moral decision to reveal the contents of his discussion with Dove after Alsup learned that Melodie was dead. *See United States v. Pace*, 833 F.2d 1307, 1313 (9th Cir.1987) (The court found

that the informant was not a police agent when the informant "acted on his own initiative in obtaining [the suspect's] confession...."). After considering circumstances surrounding the September 15th conversation, the court concludes that the conversation did not constitute custodial interrogation by law enforcement officers.

The court's finding is consistent with the nature of the Fifth Amendment. The Fifth Amendment is designed to prevent police coercion from encouraging an individual to give up his right against self-incrimination. "Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated even by the most damning admissions." *United States v. Washington*, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); *see also, Hoffa v. United States*, 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966) (There must be some element of compulsion before a court will find a Fifth Amendment violation.). In the present case, Dove was not compelled to make incriminating statements because Dove did not realize that Alsup was a police informant. *See W. La-Fave & J. Israel, Criminal Procedure* 315–16 (Hornbook Series Student Ed.1985). Since Dove did not recognize Alsup's relationship with the police department, the conversation between Dove and Alsup did not subject Dove to "the interplay of interrogation and custody [that] would 'subjugate [Dove] to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." *Rhode Island v. Innis*, 446 U.S. at 299, 100 S.Ct. at 1688, *quoting, Miranda v. Arizona*, 384 U.S. at 457–458, 86 S.Ct. at 1618–1619; *see also, United States v. Burton*, 724 F.2d at 1288, *quoting, United States v. Gardner*, 516 F.2d 334, 339 (7th Cir.1975) ("Because the agents were undercover, the defendant was not 'confronted with governmental authority of which he was aware, and consequently there could be no inherent compulsion.'"). Since Dove voluntarily conversed

---

**9.** Most discussions regarding the Fifth Amendment define "custodial interrogation" as questioning initiated by law enforcement officers. *See Rhode Island v. Innis*, 446 U.S. at 298, 100 S.Ct. at 1688. Although courts generally seek to

protect suspects against interrogations conducted by law enforcement officials, it is reasonable to extend that protection to interrogations conducted by individuals acting pursuant to police authority.

with Alsup and Alsup's presence at the jail was also wholly voluntary, admissions made by Dove to Alsup do not violate Alsup's privilege against compulsory self-incrimination. *See Flittie v. Solem,* 751 F.2d at 974–75.

### B. Unnecessary Delay

 Dove also contends that his incriminating statements should be inadmissible because the statements were made following an unreasonable delay between his arrest and his initial appearance.[10] In order to determine whether an incriminating statement was voluntarily made, courts must look to the totality of circumstances in order to determine whether incriminating statements were the product of a free and rational choice. *Greenwald v. Wisconsin,* 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968). At least one court has held self-incriminating statements inadmissible when such statements were made following an extended period in custody. *United States v. Hernandez,* 574 F.2d 1362, 1368 (5th Cir.1978); *But see, United States v. Corral–Martinez,* 592 F.2d 263, 268 (5th Cir.1979) (The delay between arrest and presentment before a magistrate was not unnecessary and did not render the accused's confession involuntary.); *United States v. Manzanilla-deJesus,* 507 F.Supp. 462, 468 (S.D.N.Y.1981), *aff'd,* 671 F.2d 493 (1981).

Although the court does not approve of the delay in this case, the court does not find that the delay coerced Dove into making involuntary, self-incriminating statements. Police officials did not interrogate Dove during the period of delay and did not use the period between Dove's arrest and his initial appearance for the purpose of wearing Dove down to extract inculpatory statements. More importantly, the nature of Dove's conversation with Alsup indicates that Dove's incarceration was not the motivating factor which drove Dove to make incriminating statements to Alsup. Dove did not make his incriminating statements because his will to resist had been reduced,

but to shield himself from prosecution by recruiting Alsup to hide Melodie's body. The accused must show some nexus between the period of incarceration and his motivation for making incriminating statements. *See United States v. Rohrbach,* 813 F.2d 142, 145 n. 1 (8th Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987). That nexus does not exist because Dove was not motivated to make self-incriminating statements as a result of his incarceration.

IT IS THEREFORE ORDERED that the petitioner's motion for summary judgment (Docket # 9) is denied. The petition for writ of habeas corpus is also denied. The Clerk shall enter judgment accordingly.

---

10. Although this argument is not fully developed, the court assumes Dove's position to be that pressure created by a four-day period of incarceration had a coercive effect and encouraged Dove to make incriminating statements to Alsup.